## MANAGEMENT AGREEMENT

THIS MANAGEMENT AGREEMENT (the "Agreement") dated as of March 2, 2015 is made and entered into by and between **Park Fletcher Realty, LLC** ("Owner"), and **Aspen Property Management and Brokerage, LLC.**, an Indiana limited liability company ("Manager").  The Lender is:  **Filbert Orton EAT, LLC.** (Lender)

### WITNESSETH:

WHEREAS, the following facts are true:

A. Owner owns the following properties in Indianapolis, Indiana:
   1. 2610 Fortune Circle East
   2. 2832 Rand Road
   3. 5522-5538 W. Raymond
   4. 2321 Executive Drive
   5. 2152-2160 S Lynhurst
   6. 2710-2762 Rand Road
   7. 5315-5365 W. Minnesota Ave
   8. 1811 Executive Drive
   9. 1810-1820 Executive Drive
   10. 1930 -1944 Executive Drive
   11. 2645 Rand Road
   12. 2701 Fortune Circle East
   13. 2801 Fortune Circle East
   14. 5601 Fortune Circle South
   15. 5701 Fortune Circle South
   16. 2840 Executive Drive/ 5524 Fortune Circle
   17. 5604 Fortune Circle South

These  seventeen (17) properties, for the terms of this contract, will be known as the "Property" consisting of approximately 808,037 SF.

B. Owner desires to employ Manager as an independent contractor to be the exclusive manager for the Property, and Manager desires to accept such employment.

NOW, THEREFORE, the parties agree as follows:

### ARTICLE I

### EFFECTIVENESS

Section 1.1 Effectiveness. This Agreement shall become effective and Manager's employment, duties, authority and compensation hereunder shall commence with respect to the Property on **March 2, 2015** ( the Commencement Date") and shall continue until the term of this Agreement expires or is otherwise terminated as herein provided.


EXHIBIT B

## ARTICLE II

## APPOINTMENT, DUTIES AND AUTHORITY

Section 2.1 Appointment. Owner hereby employs Manager as an independent contractor to be the exclusive manager for the Property and to manage, operate, maintain and provide certain services to the Property in accordance with the terms hereof (hereinafter sometimes collectively referred to as "Manager Services"), and Manager hereby accepts such employment.

Section 2.2 Independent Contractor. Manager's relationship to Owner hereunder is that of an independent contractor, and neither Manager nor Owner shall represent to any other person that Manager's relationship to Owner is other than that of an independent contractor. Nothing contained in this Agreement or the relationship between

Owner and Manager shall be deemed, whether expressed or implied, to constitute a partnership, joint venture, employment or agency between Manager and Owner.

Section 2.3 General Duties. Manager shall use good faith efforts to manage and operate the Property in a manner consistent with the nature and quality of the Property. Manager shall make available for the benefit of Owner the full benefit of Manager's knowledge in the management of commercial and residential properties.

Section 2.4 Specific Duties. Manager shall have the following duties and obligations:

(a) Lease Obligations. Manager shall duly and timely perform all duties and services necessary and required for the proper operation, maintenance and day to day management of the Property as such might be required pursuant to executed leases including the supervision of construction of tenant finish improvements. Owner may bid to operate and maintain the property. However, it is the Manager's decision as to what services to utilize.

(b) Maintenance. Manager shall cause the Property to be operated and maintained in a condition as required for like or similar property to the Property. Manager shall cause an annual inspection of the Property to be performed, with emphasis on major structural components such as the roof, exterior walls, foundation, HVAC, and the parking lot.

(c) Budget. At least thirty (30) days before the end of each calendar year, Manager shall prepare and submit to owner a proposed budget for the operation and maintenance of the Property for the following calendar year for approval. Owner and Lender shall approve such budget or advise Manager in writing what changes are required to obtain Owner and Lender's approval of such budget within fifteen (15) days after receipt of such budget.

(d) <u>Contracts and Supplies</u>. At Owner's expense, Manager shall purchase all supplies and equipment necessary or appropriate for the management and operation of the Property. In making any contract or purchase hereunder, Manager shall use good faith efforts to obtain favorable discounts, rebates, or commissions under any contract or purchase order made hereunder shall inure to the benefit of Owner. Manager shall attempt to enter into contracts of the most advantageous length (but not to exceed three (3) years), with an option to terminate upon the occurrence of certain events. Provided Manager has received the necessary funds from Owner, Manager shall make payments under any such contract or purchase order at such date or otherwise in compliance with such contract or purchase order to enable Owner to take advantage of any such discount. Owner may bid to operate and maintain the property. However it is the Manager's decision on what services to utilize.

(e) <u>Limitation on Management Authority</u>. Manager shall not have the authority to make any contract or purchase any supplies or provide any individual item of maintenance, repair or replacement which is not approved in the then current annual budget for the Property if such contract or purchase order amounts to Five Thousand Dollars ($ 5,000.00) or more (except emergency repairs which may be made immediately), unless such contract or purchase order is specifically authorized in writing or via email by Owner. Manager shall not enter into any contract or agreement for supplies, maintenance, repair or replacement having a term in excess of one (1) year without the prior approval of Owner. At all times, Managers shall use good faith efforts to provide goods and services to the Property at competitive costs.

(f) <u>Service by Manager's Employees</u>. Subject to the provisions hereunder, Manager may elect to have the maintenance, repair, cleaning and other services with respect to the Property performed by employees of Manager, and the reasonable cost of performing such services shall be at the expense of Owner. Manager shall be paid the reasonable cost of performing repair, maintenance, and other services performed for Owner by Manager with Manager's employees. Manager's employees who handle or are responsible for the Owner's monies shall be bonded by a fidelity bond in an adequate amount. Maintenance Engineer services will be billed as follows:

| Maintenance Engineer | $45 Per Hour |
| Trip Charge | $20 Per Trip |

(g) <u>Insurance</u>. Manager shall work with Owner's insurance agent to perform an annual review of all insurance coverage's placed on the Property.

<u>Section 2.5 Rent Collection</u>. Manager shall use good faith efforts to collect all rents (including percentage rent, escalation billings and billings attributable to tenant participation and operating expenses, taxes and common area maintenance charges) and other sums due Owner from any tenant, subtenant or others in the ordinary course of business and upon Owner's approval may employ such lawyers and accountants and other professional persons as may be necessary to proceed in the name of Owner against

any person, firm or corporation indebted to Owner for rentals and otherwise. Manager shall not, without the consent of Owner, permit any person to occupy any space on the Property without a written lease.

Section 2.6  Payment of Expenses. Manager shall maintain a separate account for Owner in the name of Manager, as agent for Owner, in which all receipts from the Property will be deposited and from which all payments with respect to the Property will be made ("Operating Funds"). Manager shall, from the Operating Funds, pay all invoices for expenses, including all fees and expenses of Manager, as and when the same become due and payable. If the Operating Funds are insufficient to cover the amounts necessary to pay the operating expenses for such month, Manager shall notify Owner, and Owner shall promptly make up any deficiency by providing additional funds to Manager. From time to time at the direction of Owner, if funds are available, Manager shall distribute amounts to Owner.

It is understood by Owner that nothing contained in this Agreement shall in any way require Manager to advance funds in payment of any cost or expenses incurred in connection with the property, it being understood that all such expenses are the obligation of Owner. If for any reason Manager does make such advances, Manager shall be promptly reimbursed by Owner.

Section 2.7.  Taxes and Insurance. Manager shall pay all taxes and insurance premiums when due to the extent that Operating Funds are available and shall notify Owner if additional funds are required.

Section 2.8  Professional Services. Manager shall employ such professional services, including lawyers, accountants, surveyors, architects and engineers on behalf of owner as may be required in the ordinary course of business of operating the Property subject to the approval of Owner and Lender. Owner shall pay the cost of such professional services.

Section 2.9  Relevant Documents. Owner shall deliver to Manager all of the relevant documents in Owner's possession in connection with the Property. These include, but are not limited to, all leases, current accounting for rents collected, and all insurance policies with respect to the Property.

## ARTICLE III

## MANAGER'S COMPENSATION

Section 3.1  Reimbursement to Manager. Owner shall reimburse Manager for all direct expenses incurred by Manager in connection with the management and operation of the Property.

Section 3.2 Management Fee. Owner shall pay Manager for Manager services hereunder, a monthly fee in the amount of the greater of Two and Three – Quarters percent (2.75 %) of the Monthly Gross Collected Income or Five Thousand, Five Hundred Dollars per month ($ 5,500.00).

Section 3.3 Right to Inspection. Manager shall permit Owner and Lender, its designees and authorized representatives to examine and copy during regular business hours all books and records of manager pertaining to the Property and the management thereof.

## ARTICLE IV

## ACCOUNTING RECORDS AND REPORTS

Section 4.1 Records. Manager shall maintain a comprehensive system of records, books and accounts employing generally accepted accounting practices and principles as applicable. Owner and Lender and others designed by owner and Lender shall, at all times upon reasonable notice to Manager have access to such records, accounts and books and to all vouchers, files and all other information and material pertaining to the Property, the management thereof, and this Agreement.

Section 4.2 Monthly Reports. On or before the thirtieth (30th) day of each month during the term of this Agreement and any extension thereof, Manager shall forward to Owner and Lender, the following reports and statements reflecting such information as of the last day of the immediately preceding month:

    (i)    Summary of Income and Expenses
    (ii)   Bank Statements

Section 4.3 Notices. All notices to or from any party or entity having privity of contract or estate with the Property or to or from any Federal, State, or local authority delivered or received in connection with the Property, not of a routine nature, shall be sent to owner and Lender as soon as is practicable after delivery or not more than five (5) days following receipt by Manager. All such notices shall be sent to Owner pursuant to the provisions of Section 7.2 of this Agreement.

## ARTICLE V

## INSURANCE

Section 5.1 Insurance by Owner. Owner shall insure the Property in such amounts and with such coverage against all hazards which Owner reasonably deems appropriate. Any certificate of insurance provided by Owner shall name Owner as the insured and

Manager and Lender as an additional insured, Loss Payee for the liability portion of the policy, and all casualty policies shall contain waivers of subrogation for the benefit of Manager and Lender. Owner shall deliver to Manager and Lender copies of all policies and certificates of insurance affecting the Property.

Section 5.2  Access to Property. Manager shall cooperate with and provide reasonable access to the Property to agents of any and all insurance companies approved by Owner which may, from time to time, be involved with the issuance of insurance policies or with the inspection of the Property in connection with existing or potential insurance policies.

Section 5.3  Notification to Owner. Manager shall promptly notify Owner and Lender, in accordance with the notice provisions of Section 7.2, of any written claim or demand, including but not limited to, personal injury or property damage asserted against owner, the Property or the Manager resulting from the use, occupancy, operation or otherwise related to the Property, and such notice shall contain all then ascertainable details of any such occurrence.

Section 5.4 Accidents and Claims. Manager will promptly notify Owner and Lender in accordance with the notice provisions of Section 7.2, and thereafter promptly investigate and make a report to owner following the occurrence of all accidents, or other occurrences which may result in claims for damage relating to the ownership, operation and maintenance of the Property, and any damage or destruction to the Property and the estimated cost of repair thereof. Manager shall prepare for approval by Owner and Lender all reports required by any insurance company or governmental agency having jurisdiction in connection therewith. Manager shall not, nor is Manager authorized or empowered to settle any claims against the Property or Owner or any insurer without the approval of Owner and Lender.

## ARTICLE VI

## TERM

Section 6.1 Term. This Agreement shall commence on the Commencement Date and shall continue thereafter (unless terminated by either party in accordance with the provisions of this Agreement) until September 4, 2015 ("Expiration Date"). In the event that either party has not notified each other of the intent to renew thirty (30) days prior to the expiration of the term, this Agreement shall be automatically renewed for an additional six month year period.

Section 6.2 Termination. Either party may terminate this Agreement upon thirty (30) days prior written notice to the other.

Section 6.3 Managers Obligations after Termination. Upon termination, expiration or cancellation of this agreement as provided below, Manager shall immediately upon such termination, expiration or cancellation:

(a) Property. Surrender to Owner, or its nominee, custody and possession of the Property, as well as all keys and security devices of whatsoever nature;

(b) Records. Deliver to Owner and Lender or its nominee, all books, documents and records theretofore maintained by Manager with respect to the Property, together with all materials and supplies and all funds in its possession belonging to Owner;

(c) Service Contracts. Assign, transfer or convey to Owner, or its nominee, all leases service contracts and other personal property relating to or used in the operation and maintenance of the Property, except any personal property which was paid for and is owned by Manager;

(d) Final accounting. Within ninety (90) days following the expiration, termination or cancellation of this Agreement, render a full accounting to Owner and Lender (including all statements and reports in the forms herein required for the final period ending with the termination date). All Operating Funds held by Manager relating to the Property shall be promptly delivered to Owner on the date of expiration, termination or cancellation, unless Manager is otherwise directed by Owner or Lender.

Upon any cancellation or expiration pursuant to this Article VI, the obligations of the parties hereto shall cease and be of no further force or effect as of the termination date, except that the indemnities contained in section 7.1 shall remain in full force and effect and Manager shall comply with the applicable provisions of this Section 6.3 and shall be entitled to receive, in accordance with the terms hereof, such compensation, if any, which may be due Manager hereunder.

## ARTICLE VII

## MISCELLANEOUS

Section 7.1 Indemnification.

(a) Manager shall exercise due care in the performance of its duties hereunder. However, Manager and its officers, directors, members and employees assume no responsibility in connection with the performance of Manager's duties hereunder for errors in judgment or other actions taken in good faith except to the extent resulting directly from the gross negligence, willful misconduct or fraud of Manager or its employees. Accordingly, Owners shall indemnify, defend and hold harmless Manager and its officers, directors, members and employees from and against any and all claims, actions, suits, proceeding, losses costs, expenses and attorney's fees arising out of Manager's performance of its duties hereunder, except that such indemnification shall not

apply to the extent resulting directly from the gross negligence, willful misconduct or fraud by Manager or its employees.

(b) Manager shall indemnify, defend and hold harmless Owner and its directors, officers, members and employees from and against any and all claim, actions, suits, proceedings, losses, costs, expenses and attorneys' fees to the extent resulting directly from the gross negligence, willful misconduct or fraud by Manager or its employees in the performance of Manager's duties hereunder.

Section 7.2. Notice. All Notices and other communications required or permitted to be given hereunder shall be in writing and shall be given by personal delivery, by overnight courier or by United States registered or certified mail (postage prepaid, return receipt requested) addressed as hereinafter provided. Notice shall be sent and deemed given when (a) if personally delivered, then upon receipt by the receiving party, (b) if mailed, then three (3) days after being postmarked, or (c) if delivered by overnight courier, then upon receipt by the receiving party of the overnight courier.

Any party listed below may change its address hereunder by notice to the other party listed blow. Until further notice, notices and other communications hereunder shall be addressed to the parties listed below as follows:

If to Manager:	Aspen Property Management And Brokerage, LLC.
910 North Shadeland Avenue, Suite 6
Indianapolis, Indiana 46219
Attention: John Perine

If to Owner:	_____
_____
_____
_____

If to Lender:	Orton Development, Inc.
3049 Research Drive
Richmond, CA   94806

Filbert Orton EAT, LLC
c/o Western Select Properties
P.O. Box 19344
Indianapolis, IN.  46219

Section 7.3 <u>Governing Jurisdiction</u>. This Agreement is made pursuant to and shall be governed and construed in accordance with the laws of the State of Indiana.

Section 7.4 <u>Successors and Assigns</u>. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, and all references herein to Owner and Manager shall include the respective successors and assigns of such parties. Managers may assign this Agreement to an affiliate of Manager at any time, without consent of Owner, and upon such assignment Manager shall be released from any and all obligations under this agreement, except for any accrued, but unsatisfied, obligations.

Section 7.5 <u>Waiver</u>. The failure of Owner or Manager to seek redress for any breach or default hereunder or to insist upon the strict performance of any covenant, agreement, provisions or condition of this Agreement shall not constitute a waiver thereof and each party shall have all remedies provided therein and at law or in equity with respect to any such act and any subsequent act constituting such breach or default.

Section 7.6 <u>Entire Agreement</u>. This Agreement shall constitute the entire agreement between the parties hereto, and no modification thereof shall be effective unless made by supplemental agreement in writing executed by the parties hereto.

Section 7.7 <u>Severability</u>. If any provisions of this Agreement or the application thereof to any person or circumstance shall be held invalid or unenforceable, the other provisions of this Agreement or the application of such provisions to the other persons or circumstances shall not be affected thereby but shall continue to be valid and enforceable to the fullest extent permitted by law.

IN WITNESS WHEREOF, the parties have executed and delivered this Agreement as the date first above written.

"OWNER"
Park Fletcher Realty, LLC

By:_____

Printed: _____

"MANAGER"

Aspen Property Management And Brokerage, LLC.

By _____

Printed: John Perine
Title: President

"LENDER"

Filbert Orton EAT, LLC

By: _____
Printed: Christopher Ayers
Title: Authorized Agent for Filbert Orton EAT, LLC.

Open.22430.50001.15158344-1